Catherine A. **BRODERICK**, Plaintiff,

v.

William B. **DONALDSON**, Chairman, Securities and Exchange Commission, Defendant.

Civil Action No. 02–0159 (AK).

United States District Court, District of Columbia.

Sept. 20, 2004.

See also 685 F.Supp. 1269.

David H. Shapiro, Ellen Kyriacou Renaud, Richard L. Swick, Swick & Shapiro, P.C., Washington, DC, for Plaintiff.

Peter David Blumberg, Washington, DC, for Defendant.

## *MEMORANDUM ORDER*

KAY, United States Magistrate Judge.

Pending before the Court is Defendant's Motion for Summary Judgement ("Motion") [27], Plaintiff's Opposition to Defendant's Motion for Summary Judgement ("Opposition") [35], and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgement ("Reply") [40]. Upon consideration of the pleadings, the entire record herein, and Oral Argument held on September 9, 2004, Defendant's Motion for Summary Judgement should be and hereby is **GRANTED**.

## I. BACKGROUND

### A. Plaintiff's Employment History & First Title VII Lawsuit

Catherine Broderick is a white female employed by the Securities and Exchange Commission ("SEC") since 1979, working first in the Washington Regional Office and next in the Division of Corporate Finance. In 1986, Broderick filed a lawsuit against the SEC claiming that her rights under Title VII to the Civil Rights Act of 1964 were being violated. *Broderick v. Ruder*, 685 F.Supp. 1269 (D.D.C.1988). Specifically, Broderick made allegations of a sexually hostile work environment and retaliation. Although claims made under Title VII are commonplace in the Federal Court system, Broderick's case against the SEC received special attention from the national media. Although people who make claims similar to those made by Broderick are oftentimes unable and unwilling to share these experiences with a wide audience, Broderick was not reticent in this regard, and appeared often to share her story.[1]

In 1988, the Trial Court conducted a bench trial and ruled in favor of Plaintiff. *Id.* The parties ultimately negotiated a proposed order and in June 1988, Judge Pratt issued a Joint Order which set forth the following:

- An award of back pay, based upon salary increases to which she would have been entitled had she been promoted on the dates listed above, with interest as provided by law.

- Removal from her personnel file of any remaining negative performance evaluations.

- A Transfer to a position in the Division of Enforcement or the Office of the General Counsel at the agreed-upon GM–15 level, with appropriate work assignments, on-the-job-training, evaluation standards, and increased responsibilities over time as she acquires the training and experience and as she demonstrates the capabilities to assume such responsibilities. (Footnote: The parties have agreed that the commission will have thirty days within which to prepare and present to the plaintiff for her approval two sets of performance standards relating to each of the two positions mentioned above. The first set of performance standards for each job will set forth the initial duties and responsibilities assigned to the plaintiff in light of her current training and experience. The second set of performance standards for each job will set forth the full duties and responsibilities she will be expected to assume after she acquires the training and experience and demonstrates the proficiency necessary to assume those duties and responsibilities.)

---

1. Examples: *A Woman Who Refused to Join the Party,* Time Magazine, 10/21/91; Amy Saltzman, *Life After the Lawsuit,* U.S. News and World Report, 8/19/1996.

- The Commission agrees to pay for a maximum of 208 psychiatric counseling sessions over a two year period to the extent not covered by the plaintiff's insurance.

- In the event that plaintiff decides to seek employment outside the Commission, in order to assist her in obtaining outside employment, will pay the reasonable costs of out-placement services if those services take place within two years from the date of this order.

Second, the Commission was permanently enjoined from

- ... retaliation against Ms. Broderick in any form for exercising her rights pursuant to Title VII of the Civil Rights Act of 1964

- ....creating or condoning the creation of a sexually hostile work environment ...

Finally, the Commission was required to take reasonable steps to advise its employees that sexually harassing other Commission employees is prohibited. *Broderick v. Ruder*, 46 Empl. Prac. Dec. P 38,042, 1988 WL 66210 (D.D.C. June 16, 1988).

### B. Actions Pursuant to the Joint Order

In prompt response to the Joint Order, the SEC transferred Broderick to the Appellate Division of the Office of General Counsel, promoted her to a GM–15 level, and gave her the job title of Counsel to the Assistant General Counsel. Although job positions at the GM–15 level within the SEC typically beget supervisory roles, functionally Broderick was a staff attorney (the entry level position for an attorney), preparing initial drafts of briefs, and on some occasions, reviewed briefs, yet never acting as a supervisor in the federal personnel sense of the word.

In 1995, and all subsequent years since, Broderick has received an "Outstanding" overall performance appraisal and has received an "Outstanding" (highest score) performance appraisal in all categories except for one titled 'Legal Analysis,' in which she received an "Exceeds Fully Successful" (second highest score) (Opposition at 9.) Additionally, and consistent with her job appraisal, on numerous occasions Broderick received praise from her supervisors regarding her work. (Id. at 9–13.) Despite receiving these high ratings, Broderick, in response to her 2000 job appraisal, sent a memorandum indicating her disapproval of, and "object[ions] to the legal analysis rating." (Id. at 14–15.) Although the "Exceeds Fully Successful" rating is given when "job performance consistently exceeds that expected" (Standard for Executive Excellence, Office of Personnel Management, available at www.results.gov/pdfs/opm—execstandard.pdf; *See also*, A Handbook for Measuring Employee Performance, Office of Personnel Management, available at http://www.opm.gov/perform/wppdf/2002/handbook.pdf), the Plaintiff nonetheless charged in her memorandum that "none of her supervisors 'had brought any failure to apply legal analysis correctly to [her] attention during this rating period.' " (Id. at 15.) (correction in original)

In November and December of 1996, Broderick sent memoranda to Richard Walker, then the SEC General Counsel, Jacob Stillman, the Solicitor of the Appellate Group, and Susan Wyderko, Assistant General Counsel, stating that she has been "wrongly accused" of not reading the record pertaining to specific cases on which she had been working. (November 25 and December 24, 1996 Memoranda (Def.Ex.8); Broderick Invest. Tr. at 39–40; Broderick Tr. at 117–118.) Again in June 1998, Broderick sent a memorandum to Jacob Still-

man, the Solicitor of the Appellate Group, copied to the Equal Employment Opportunity ("EEO") office, complaining that she was "still being treated as a staff attorney" and requesting a "change in job title and position commensurate with my seniority, experience and outstanding performance appraisals." (Broderick Invest. Tr. (Oct. 25, 2000) at 15; Broderick Tr. at 117; June 12, 1998 Memorandum (Motion Ex. 9[29]).) Broderick stated that she is "already being paid at the [appropriate salary] level by virtue of my lawsuit against the Commission." (Id.) In response to her memorandum, agency officials met with Broderick to discuss her concerns and gave her additional duties (i.e., editing the Appellate Group's monthly summary of litigation events). (Stillman Invest. Tr. at 65.)

In 1996 and 1998 Broderick unsuccessfully applied for the position of Assistant General Counsel, and in 1999 Broderick unsuccessfully applied to become Senior Litigation Counsel, a supervisory position within the Agency, and was one of six applicants for the position. (Compl. at ¶ 7(e)-(g).) Two other applicants, Hope Augustini and Rada Potts were selected for the Senior Litigation Counsel positions. (Opposition at 16–18.)

On July 13, 2000, Broderick's supervisor, Katharine Gresham, approached Broderick to discuss Broderick's uncivil behavior toward Gresham. In response, Broderick became hostile, and made a comment about Gresham's mother and suggested to her that she seek psychological assistance. (July 13, 2000 Memorandum (Motion Ex. 4); Complaint ¶ 7(n); Pl. Int Resp., No. 11 (Motion Ex. 6).) Following this exchange Gresham spoke with Stillman and an Associate General Counsel about the most appropriate way to respond to Broderick's unprofessional conduct and the decision was made to take the lowest form of personnel action possible by sending her a disciplinary memorandum outlining the incident, admonishing her for her statements, and advising her that her conduct was inconsistent with her performance standards. Although letters of this kind are typically placed in an employees personnel file, Broderick's supervisors decided that the memorandum would not be added to her personnel file.

### C. Procedural History of the Pending case

In January 2002, Broderick filed a complaint in this case claiming that she had been subjected to a hostile work environment, including failure to provide her with supervisory duties and responsibilities commensurate with her experience, failure to promote her on three separate occasions, failure to improve her rating on performance evaluations failure to provide her with assignments, bonuses and awards, and giving her a disciplinary memorandum regarding her conduct. (Complaint at ¶ 7.) The Plaintiff's claims are predicated on violations of Title VII to the Civil Rights Act of 1964 and violations of the Joint Order filed in the previous Title VII case brought by the Plaintiff against the SEC. Specifically, the Plaintiff claims that she suffered and continues to suffer economic losses from lost pay and benefits, lost career benefits and lost career opportunities, emotional distress, pain and suffering, and personal and professional humiliation. (Complaint at ¶¶ 9,11.)

The SEC responded by filing an answer to the Plaintiff's complaint [7]. This case was referred to the undersigned Magistrate Judge for all purposes with consent of all parties on May 20, 2002. (Consent to Proceed Before a United States Magistrate [9]) Following the close of discovery, the Defense filed a Motion for Summary Judgment [27], the Plaintiff responded

with an Opposition to Defendant's Motion for Summary Judgment [35], and the Defendant responded with their Reply thereto [40].

The Defense has moved for summary judgment on grounds that (1) Plaintiff has failed to timely and completely exhaust her administrative remedies; (2) Plaintiff cannot establish a *prima facie* case of retaliation under Title VII; (3) Plaintiff has failed to show a cognizable hostile work environment; and (4) Plaintiff has failed to show civil contempt of the 1988 Joint Order.

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the pleadings and evidence show that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. 2505. However, the nonmoving party must present more than a "scintilla of evidence" and must come forward with specific facts that would enable a reasonable jury to find in its favor. *Id.* at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the evidence presented by the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

In the context of discrimination cases, summary judgment should be approached with special caution because of the difficulty of proving discriminatory intent and disparate treatment. *Morgan v. Federal Home Loan Mortgage Corp.*, 172 F.Supp.2d 98, 104 (D.D.C.2001) ("While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [his] obligation to support [his] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial.") (*quoting Calhoun v. Johnson*, Civil No. 95–2397, 1998 WL 164780 at *3 (D.D.C. Mar.31, 1998)) (citation omitted); *Ross v. Runyon*, 859 F.Supp. 15, 21–22 (D.D.C.1994). These standards do not eliminate the use of summary judgment in discrimination cases. *See, e.g., Clark County School District v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (finding that District Court's grant of summary judgment was proper and overturning Court of Appeals decision that reversed District Court); *Forkkio v. Powell*, 306 F.3d 1127, 1132 (D.C.Cir.2002) (upholding grant of summary judgment for defendant in Title VII case alleging racial discrimination and retaliation); *Brown v. Brody*, 199 F.3d 446, 448 (D.C.Cir.1999) (upholding grant of summary judgment for defendant in Title VII suit alleging racial and gender discrimination and retaliation). Summary judgment is not a "disfavored procedural shortcut," but is an integral procedural tool which promotes the speedy and inexpensive resolution of every case. *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. 2548.

### B. Legal Standard for Title VII Claims.

*(1) Burden–Shifting Framework Governing Title VII Claims.*

In *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established a burden-shifting framework that governs

the analysis of racial discrimination and retaliation claims. *See, e.g., Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff bears the initial burden of proving a *prima facie* case of retaliation by a preponderance of the evidence. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Then the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the action. *Id.* If the defendant meets this burden, then the presumption of discrimination is rebutted and drops from the case. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff must then show that the articulated reason was a pretext and that the actual reason was discriminatory. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. At all times, the ultimate burden of persuasion remains with the plaintiff to prove that she was subjected to discrimination. *Hicks,* 509 U.S. at 507–08, 113 S.Ct. 2742; *Brown v. Brody,* 199 F.3d at 458.

■ The requirements for a *prima facie* case of discrimination are flexible and vary depending on the type of case. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. Here, to establish a claim of retaliation, the Plaintiff must prove that (1) she engaged in statutorily protected activity; (2) she was subjected to adverse employment action; and (3) that a causal connection exists between the two. *Brodetski v. Duffey,* 199 F.R.D. 14, 19 (D.D.C.2001); *Hastie,* 121 F.Supp.2d at 79–80; *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985)(*quoting McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984)); *See also, Carney v. American University,* 151 F.3d 1090, 1094 (D.C.Cir.1998); *Thomas v. National Football League Players Ass'n,* 131 F.3d 198, 202 (D.C.Cir.1997).

Causation is often demonstrated by temporal proximity, and "[a]lthough courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length." *Brodetski,* 199 F.R.D. at 20.

*(2) Administrative Procedures and Exhaustion Requirements.*

In 42 U.S.C. § 2000e–16, Congress granted the EEOC broad authority to enforce within the federal government the Civil Rights Act's anti-discrimination provisions. *See, e.g., Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997). This broad power includes the authority to promulgate regulations controlling the manner in which federal agencies process discrimination complaints. *Id.* Under this authority, the EEOC has issued "detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the [EEOC]." *Id.* Complainants are required to timely exhaust administrative remedies before filing suit in court. *Id.* However, these time limits are similar to statutes of limitations in that they do not create a jurisdictional bar to bringing suit and are subject to equitable tolling, estoppel, and waiver. *Id.*

■ Under the EEOC's regulations, an aggrieved employee must contact an EEO counselor within 45 days of the alleged discriminatory act or the effective date of the action. 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved through the informal counseling process, then the aggrieved employee must file a written complaint with the agency that allegedly dis-

criminated against her within 15 days of receiving the notice of the right to file a discrimination complaint provided for in 29 C.F.R. § 1614.105(d), (e), or (f). 29 C.F.R. § 1614.106(a)-(c). The administrative charge requirement is not intended to impose a heavy, technical burden on complainants, but it provides the employer with notice of the claim and narrows the issues. *See, e.g., Park v. Howard University*, 71 F.3d 904, 907 (D.C.Cir.1995). Therefore, a Title VII suit following an EEO complaint is limited to "claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id. (quoting Cheek v. Western & Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir.1994) (citations and internal quotations omitted).) After the written complaint is filed, the agency must then investigate the claim within 180 days or reject the complaint and issue a final dismissal. 29 C.F.R. §§ 1614.106(e), 1614.107.

At the end of the agency's investigation, the employee can request a hearing before an administrative law judge ("ALJ") or request an immediate final agency decision. 29 C.F.R. § 1614.108(f). If an ALJ hearing is held, the ALJ issues factual and legal conclusions which are transmitted to the agency as a recommended decision. 29 C.F.R. § 1614.110(a). The agency then issues a final decision. 29 C.F.R. § 1614.110. An employee who receives a final adverse decision may appeal the decision to the EEOC within 30 days or file a civil action within 90 days. 29 C.F.R. §§ 1614.401, 1614.402, 1614.407(a). If the employee appeals the decision to the EEOC, she must file a civil action within 90 days of receiving the EEOC's decision. 29 C.F.R. § 1614.407(c). She may also file a civil action any time after her complaint has been pending before the agency or the EEOC for at least 180 days. 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1614.407(b).

■ As set forth above, compliance with these procedures is mandatory. The Supreme Court recently emphasized that "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)). Failure to comply with these requirements does not erect a jurisdictional bar to suit, but is an affirmative defense which the defendant must plead and prove. *Morgan*, 122 S.Ct. at 2076–77; *Bowden*, 106 F.3d at 437. This affirmative defense, like a statute of limitations, is subject to equitable tolling, estoppel, and waiver, but these equitable doctrines must be applied *sparingly. Morgan*, 122 S.Ct. at 2072, 2076–77; *Bowden*, 106 F.3d at 437; *Jarmon v. Powell*, 208 F.Supp.2d 21, 26 (D.D.C.2002).

## III. ANALYSIS

### A. Failure to Timely and Completely Exhaust Administrative Remedies

The Defendant contends that the Plaintiff failed to timely and completely exhaust her administrative remedies. The SEC claims that the Plaintiff's first contact with an EEO counselor was on February 9, 2000, and therefore, that Plaintiff is precluded from challenging as unlawful any action that occurred 45 days prior to that contact date (i.e., on or before December 24, 1999). (Motion at 8–10.)

Plaintiff's claims are predicated on, *inter alia*, the SEC's failure to promote Ms. Broderick in 1996, 1998, and 1999 as well as on her "Exceeds Fully Successful" performance evaluations from 1995 through current, and the 2000 letter of reprimand. Broderick did not contact an EEO counsel-

or within 45 days of the 1996 or 1998 non-promotions, nor within 45 days of her performance evaluations from 1995 to 1999. She therefore has not exhausted her administrative remedies with respect to these claims. Although the exhaustion issue is dispositive of these claims, the Court will nonetheless proceed to evaluate them in the substantive analysis that follows.

## B. Title VII to the Civil Rights Act of 1964

The SEC claims that the Plaintiff cannot make out a *prima facie* case of retaliation based on Title VII. (Motion at 10.) Furthermore, the Defendant claims that it has provided nondiscriminatory reasons for its decisions and that Broderick is unable to show that the reasons given are pretextual and that the actual reason was retaliation. (Id. at 21–31.)

### (1) Prima Facie Case of Retaliation Under Title VII

As stated above, the Plaintiff bears the initial burden of establishing a *prima facie* case of retaliation. To that end, the Plaintiff must show (1) that she was engaged in statutorily protected activity; (2) that the employer subjected her to an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse action. *Carney v. The American University,* 151 F.3d 1090, 1095 (D.C.Cir.1998). The Court is ever mindful that the "initial burden is not great. Plaintiff merely needs to establish facts adequate to permit an inference of retaliatory motive." *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984). Furthermore, the Court recognizes that within the context of a decision on summary judgment, it must view the evidence in the light most favorable to the Plaintiff. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Nonetheless, Plaintiff has failed to estab-lish a *prima facia* case of retaliation for the reasons set forth below.

### a. Statutorily Protected Activity

The Plaintiff's lawsuit is based on three incidences in which she claims she engaged in statutorily protected activities.

First, the Plaintiff claims that the SEC retaliated against her as a result of her 1986 lawsuit against the SEC. The defense acknowledges that the 1986 lawsuit constituted a protected activity. Thus, claims of retaliation connected to the 1986 lawsuit are cognizable.

■ Second, on November 25, 1996 and on December 24, 1996, the Plaintiff sent two memoranda to her supervisors complaining about the "accusations" that she had not read the record of a case on which she had been working. (Nov. 25 and Dec. 24, 1996 Memoranda (Motion Ex. 8); Broderick Invest. Tr. at 39–40; Broderick Tr. at 117–118.) The SEC claims that these memoranda do not rise to the level of protected activity because they do not make reference to 'discrimination' or 'retaliation' of any kind. (Motion at 15.) The Plaintiff argues, however, that they constitute protected activity, relying on a passage at the bottom of the November 25th memo which states, "Once again in my long history at the Commission, I have been unjustly accused." (Pl. Reply at 27; Def. Ex. 8.) The Plaintiff argues that this statement refers to the prior lawsuit. (Id.)

■ 42 U.S.C. § 2000e–3 (a) provides in relevant part that it is unlawful for an employer to discriminate against an employee for opposing any practice made unlawful under this statute or for making a charge under the statute. The Court of Appeals for this District has held that "the statutory prohibition against discrimination is very broad, protecting an employee who 'participate[s] in *any* manner' in a

Title VII proceeding." *Barnes v. Small,* 840 F.2d 972, 976 (D.C.Cir.1988)(emphasis and corrections in original). Also, the determination as to whether the memorandum is protected activity is a question of law because it relies on an interpretation of Title VII. *Id.* In *Barnes,* the Court of Appeals found five letters written by an employee to be statutorily protected because the letters made explicit reference to another ongoing Title VII action. *Id.* In contrast, the memoranda written by Broderick make reference only to 'accusations' against the Plaintiff. (Motion Ex. 8.) The Plaintiff wrote these memoranda after being employed with the SEC for close to 18 years and it is likely or at least highly possible that the Plaintiff had several occasions in which she felt wrongly accused by others in the organization. Although she claims that the accusations against (that she had not fully reviewed a case record) were false, she did not suggest that they were made in retaliation for the 1986 litigation. The Court is unconvinced that the 'accusations' Broderick references arise from the 1986 litigation. These memoranda, therefore, do not constitute statutorily protected activity.

■ On June 12, 1998, the Plaintiff sent a memorandum to her supervisors complaining that she had not been promoted nor given supervisory responsibilities. The Plaintiff also requested "a change in job title and position commensurate with her seniority, experience and outstanding performance appraisals." (Broderick Invest. Tr. (Oct. 25, 2000) at 15; Broderick Tr. at 117; June 12, 1998 Memorandum (Motion Ex. 9.))

In this memorandum, Broderick states that she is "already being paid at the GS–15 level by virtue of [her] lawsuit against the commission" which, she argues, although not specifically stating the word 'discrimination,' nonetheless constitutes

protected activity because of its reference to the previous lawsuit. (Opposition at 28.) The Court does not accept Broderick's tenuous interpretation of this statement because of the context in which it appears. The memorandum was divided into three paragraphs. The first paragraph discusses her frustrations and her perceptions of inequity, the second and third her desire for change in job title and position. It is in the second paragraph that Broderick makes reference to her previous Title VII lawsuit. Had she intended to reference the Title VII lawsuit as the motivation for the alleged discrimination against her, the reference would have specifically made that connection, not stated tangentially as the basis for her grade 15 salary. The entire sentence reads, "Such a change in title and position would not entail additional cost to the Commission since I am already being paid at a GS–15 level *by virtue of my lawsuit against the Commission.*" The Plaintiff's reference to this sentence in her brief does not include the first portion of the sentence, which serves as a follow-up to her request for a change in job title. (Opposition at 28.) Taken in context, the reference to her previous lawsuit only serves to modify the fact that she is already being paid at the GS–15 level and does not constitute an independent allegation of discrimination, and is thus not statutorily protected within the legal framework for a *prima facie* case of retaliation. *Jones v. Billington,* 12 F.Supp.2d 1, 13 (D.D.C.1997)(internal citations omitted.)

#### b. Adverse Personnel Action

Although the Court concludes that the only statutorily protected activity relevant for further consideration under the *prima facie* retaliation analysis is her 1986 lawsuit, the Court will consider *arguendo* that the three memos constitute statutorily pro-

tected activity in analyzing Plaintiff's claims of adverse personnel action.

■ To establish whether an action taken by an employer constitutes an adverse personnel action, the Plaintiff must show "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Brown*, 199 F.3d at 457. The Plaintiff alleges that the letter of reprimand that she received from Jake Stillman on July 13, 2000 (Motion Ex. 4), which discusses Broderick's verbal exchange with her supervisor, Katharine Gresham, constitutes an adverse personnel action without proffering any evidence supporting that assertion. The letter was given to Broderick but was not placed in her personnel file. (Gresham Invest. Tr. at 53–54, 72–73; Gresham Tr. at 117, 125.) At a minimum, Broderick must show that this letter constituted a "significant change in employment status, such as hiring firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.*

The SEC argues that the action is not adverse because it is the lowest possible form of discipline that can be given to an employee, and that no adverse consequences flowed from it. (Motion at 20.) The Plaintiff argues that this action constitutes an adverse personnel action because it was relied on by Stillman in his assessment of her fitness for promotion. (Opposition at 35.) Citing *Brown*, the Plaintiff argues that this reliance signals its effect on "the terms, conditions, or benefits" of Broderick's employment. (*Id.*) Plaintiff's reliance on *Brown* is misplaced. In *Brown*, as here, the Plaintiff had been admonished by her employer. *Brown*, 199

F.3d at 457. The Court in *Brown* found that because the letter of admonishment "did not threaten or even effect [Plaintiff's] employment," it did not constitute adverse action. *Id.* This Court is mindful of the fact that the letter of reprimand given to Broderick may have indirectly affected her candidacy for promotions or higher performance evaluations by affecting he supervisors' impressions of her. While Broderick's actions, and the letter of reprimand in response thereto, may have affected her supervisors' impressions of her as an employee, which may have then had an effect on their decision making, this connection is indirect. Thus, the letter of reprimand, in and of itself, does not constitute an adverse personnel action.

■ The Plaintiff's second allegation of adverse personnel action stems from her nonselections to Assistant General Counsel positions in 1996 and 1998, as well as a Senior Litigation Counsel position in 1999. The Defense does not dispute that non-selection is an adverse personnel action. (*See* Motion and Reply.) Indeed it is quite clear that a denial of a promotion can be considered an adverse personnel action. *Hishon v. King & Spalding*, 467 U.S. 69, 75, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Therefore, the non-selections to these positions are considered by this Court to be adverse personnel actions.

■ Third, Plaintiff alleges that the grading of "Exceeds Fully Successful" on Legal Analysis constitutes adverse personnel action. (Opposition at 14–16.) However, "formal criticism or poor performance evaluations" are not considered adverse personnel actions if they "neither affected the [Plaintiff's] grade or salary." *Brown*, 199 F.3d at 458. Thus, Broderick's evaluations of Exceeds Fully Successful are not adverse personnel actions.

### c. Causal Connection Between Protected Activity and Adverse Personnel Action

The Plaintiff must demonstrate a causal connection between her protected activities and the adverse personnel actions taken. The only claims remaining for the Court to consider at this stage in the analysis are her claims of retaliation arising from the 1988 lawsuit and Plaintiff's claim that she was not selected as a Senior Litigation Counsel or as an Assistant General Counsel. Nevertheless, the Court will approach the question of causation as if all of the Plaintiff's claims were still before the Court for further consideration. The Defendant argues that: (1) the amount of time between the protected activity and the adverse action undermines an inference of causation, (2) none of the agency officials who allegedly retaliated against the Plaintiff were involved in the prior litigation, and (3) Plaintiff has adduced no specific facts supporting such an inference. (Motion at 11.)

 A party to a lawsuit can establish causation based on temporal proximity between the protected action and the adverse personnel action. If there is a relatively close temporal proximity, the Courts can infer causation. *Clark County School District v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). *See Ampofo v. National Rehabilitation Hospital*, 66 Fed.Appx. 209 (D.C.Cir.2003). That being said, if the time lapse is more than a year, Courts will not infer causation. *See Brodetski v. Duffey*, 199 F.R.D. 14, 20 (D.D.C.2001) (holding that a six year time lapse is too long to establish a causal connection); *Lockamy v. Truesdale*, 182 F.Supp.2d 26, 37 (D.D.C.2001); *Ball v. Tanoue*, 133 F.Supp.2d 84, 91 (D.D.C. 2001); *Garrett v. Lujan*, 799 F.Supp. 198, 202 (D.D.C.1992) (holding that the year between EEO activities and the adverse

employment decision is too great a length of time to support an inference of causation). In the present case, the protected activity occurred roughly 10 years before any adverse personnel actions. The Court will therefore draw no inferences of causation. Just as a close temporal proximity between protected activity and an adverse action infers causation, the Court believes that the interminably long gap between protected activity in this case and the adverse personnel action favor a presumption of no causation. *See Goetzke v. Ferro Corporation*, 280 F.3d 766 (7th Cir.2002) (holding that a substantial time lapse is counter evidence of any causal connection).

Pretermitting the issue of temporal proximity, there are other factors that can help establish causation absent a clear or express statement, including whether the individuals involved in the protected activity are the same as those in the adverse action, and whether the parties have any motive for retaliating. *See Bieber v. Runyon*, 1996 WL 525372 at *11 (D.D.C.1996). The Plaintiff argues that the "extreme circumstances" of her case as well as the fact that "her new managers had a keen interest in [the 1986] case and believed that her claims of sexual harassment were not meritorious" leads to a reasonable inference of "retaliatory animus." (Opposition at 30.) This Court cannot agree. First, none of the individuals implicated in the 1986 lawsuit have ever supervised Broderick in the Appellate Division. Furthermore, although many of the employees in the Appellate Division were acquainted with employees in the Enforcement Division and were therefore aware of the 1986 lawsuit, the Plaintiff proffers no evidence or argument suggesting the sources of "retaliatory animus" let alone retaliatory 'motive' growing out of these connections. Although Broderick quotes several supervisors in support of her position, (e.g. "She

gets paid at this level and she can't do the work," Id.) the Court interprets these statements as mere misgivings about Broderick's ability to succeed at a GS–15 level, not the individuals' 'motives' for retaliation.

Because the protected activity and the alleged adverse personnel action occurred at least 10 years apart, and because none of those individuals involved in the pre-1988 protected activity, save Ms. Broderick, were involved in the alleged adverse personnel action, and absent some proffer of a 'retaliatory motive,' the Plaintiff has failed to show any causation between the protected activity and the adverse action, and has thus failed to establish a *prima facia* case of retaliation. *See Mitchell,* 759 F.2d at 86.

### (2) Defendant's Non–Discriminatory Reasons for Decision

Although the Plaintiff has not established a *prima facia* case of retaliation, the Court will nonetheless examine the non-discriminatory reasons offered by the SEC for its actions. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

■■■ In support of the personnel decisions undertaken by the SEC, the Defendant makes essentially two arguments. First, with regard to the reprimand letter sent by Stillman to Broderick, the SEC argues that it was sent in response to action taken by Broderick and was consistent with actions taken in similar situations in which other employees have engaged in similar conduct. (Motion at 20(n.5).) Second, with regard to Broderick's performance appraisals, Defendant has proffered testimony from several of Broderick's supervisors who all testify, in one way or another, to Broderick's shortcomings as an employee. (Motion at 23–28.) Finally, with regard to the non selection of Broderick for supervisory positions, Defendant has proffered testimony of Broderick's supervisors who are unanimous in their assessment that the Plaintiff is not qualified to be a supervisor.[2] In addition, Broderick's supervisors believe that her legal analysis is not on a par with her co-workers.[3] Furthermore, with specific regard to her candidacy for the Senior Litigation Counsel position, Plaintiff "didn't really ... seem to have any understanding of what the job entailed, to actually supervise a brief and run a brief and run a case." (Bennington Invest. Tr. at 36–37; *See also,* Stillman Invest. Tr. at 24–25; *See also,* Gresham Invest. Tr. at 97–98.) Broderick's supervisors testified to the extremely strong candidacy of Ms. Augustini, characterizing her as a "absolutely out-

2. For example, Broderick's former supervisor Katherine Gresham testified that she "wouldn't trust [Broderick] to work with a staff attorney and pull out all the analytical things that need to be done to explain to the court how to resolve a legal issue or case." (Gresham Invest. Tr. at 66–67.)

3. General Counsel Randy Quinn testified that Broderick's "legal analysis could be improved as far as being better at seeing all aspects of an issue." (Quinn Invest. Tr. at 37.) Assistant General Counsel Mark Bennington testified that Broderick is "not as attuned to the limitations of the appellate process and the understanding of what the Court of Appeals is looking at and what the standards of review are, and then what our role as appellate attorneys is ... there's a significant gap between Cathy's legal analysis and that of other people in the office, and I think it fair to not give her the Outstanding in analysis ... she's not as strong there as in other areas" (Pennington Tr. at 41.) Assistant General Counsel Susan Wyderko testified that Broderick's factual write-up on a particular case was "a serious problem" and was "inconsistent with the facts in the record." (Wyderko Tr. at 20, 22.) Based in part on these experiences, Wyderko believed that Broderick's performance was "certainly not outstanding" and "needed a great deal of improvement." (Id. at 34–36.)

standing ... brilliant" (Gresham Invest. Tr. at 31–32), "the best all-around of the staff attorneys, best all-around lawyer in the office" (Id. at 38), and an "absolutely superb litigator." (Summergrad Invest. Tr. at 47). The supervisors characterize employee Potts as an "extremely thorough researcher ... a very careful analyst," (Id.) and "one of the most brilliant attorneys we have ever seen." (Stillman Invest. Tr. at 94.) Furthermore, the Defense has also proffered testimony of these supervisors who attest to the exceptional candidacy of those actually selected for those positions and that they were and are more qualified for those positions than Broderick. (Id. at 28–31.)

In contrast, the Plaintiff proffers merely her perspective that, "both Ms. Augustini's writing ability and her legal analysis were deficient." (Broderick EEO Testimony at 124.) Broderick also proffers to the Court a "point by point comparison of Ms. Broderick's experience and training with Ms. Augustini's" (Opposition at 32–33.)

As the Defendant has "articulated some legitimate, non-discriminatory reason" for their actions, the burden shifts back to the Plaintiff to show that the reasons given are pretextual and that the true reason is retaliation. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

### (3) Burden Shifts to Plaintiff to Show that Defendant's Reasons are Pretextual

Plaintiff contends that she was reprimanded, not given the 'Outstanding' rating in the legal analysis category of her performance appraisal, and was not selected for supervisory positions because there was an environment of retaliation that existed against her and that the reasons given by the agency are pretextual. (*See* Opposition.)

In support of this position and with respect first to the letter of reprimand, the Plaintiff argues that the letter was a form of retaliation against Broderick, yet neither specifies the source of the retaliation, nor provides any evidence or argument supporting this assertion. (Opposition at 20.) Without more, the Court cannot validate the Plaintiff's claim. As the Defendant has suggested, the reprimand letter resulted from Broderick's comments to Gresham, and were not retaliatory.

With respect to the performance appraisals, the Plaintiff argues that she was given the 'exceeds fully satisfactory' grade deliberately so that she would not qualify for a promotion. (Opposition at 14–16.) As with her challenges to the letter of reprimand, the evidence Broderick offers to support this proposition is irrelevant. Broderick points out that Spillman had, on one occasion, characterized Broderick's work as "excellent." Also, Broderick notes her belief that the "outstanding" rating for another employee was inappropriate because on one occasion Broderick had to correct that employee's work. (Opposition at 15–16.) These examples merely highlight Broderick's perceptions of her value as an employee in comparison to others and in no way calls into question the reasons given by the Defendant for their perceptions of Broderick or the actions taken thereupon.

With respect to Broderick not being promoted to a supervisory role, the Plaintiff argues that the Defendant's reasons are pretextual because Broderick was more qualified for these positions than the individuals who ultimately got them. (Opposition at 17.) In support of this assertion, Broderick argues that she had the longest tenure, she had noticed that one of the other applicant's legal analysis was deficient, and because Broderick was generally more qualified than the other candi-

dates. (Id. at 32–34.) The ease with which Broderick can find deficiencies in others' work does not overcome the mountain of testimonial evidence to the contrary—that Broderick's work was deficient, and that she was the least qualified. (*See* Infra at 19(n.2).)

Broderick cites to eighteen specific instances in which she was complimented on her work product and argues that these reviews are inconsistent with her performance evaluations and non-selections. She argues, therefore, that the Court should attribute this disparity to a retaliatory scheme. The Court cannot agree. To the contrary, the fairest interpretation of her receiving compliments of her work is that her supervisors had no retaliatory motivations against her, were even-handed, and were giving praise where praise was due. On the flip side, her nonselections and 'Exceeds Fully Successful' evaluations are not fairly attributable to a retaliatory scheme but rather to the fact that Broderick was not the most qualified for the position because her skills both in legal analysis as well as skills requisite to being a successful supervisor were insufficient. In short, the Plaintiff has not successfully overcome her burden of showing that the motivations proffered by the Defendant for these actions are pretextual or that the actual reason is retaliatory.

Finally, Plaintiff offers no objective evidence that the number of years she has been employed at the SEC, standing alone, qualifies her for a management or supervisory position.

### B. Alleged Violations of the 1988 Order

██ Lastly, the Plaintiff claims that the SEC should be held in contempt for violating Judge Pratt's 1988 Joint Order. Specifically, the Plaintiff claims that Judge Pratt's Order mandates that the SEC give Broderick, "appropriate work assignments, on-the-job training, evaluation standards, and increased responsibilities over time and as she demonstrates the capabilities to assume such responsibilities." (J. Pratt Order; Opposition at 22.) The Plaintiff argues that the plain meaning of this Order is that "Broderick would transition to the duties of a Grade 15 as she progressed in her performance in the Appellate Group." (Opposition at 22.) The Plaintiff argues, therefore, that "a reasonable fact-finder could conclude that Ms. Broderick has achieved the sort of professional growth that was expected for her to assume her full Grade 15 duties." (Id. at 24.) The Court is in full agreement with this statement. However, the reasonable fact finder for this assessment is neither a judge nor a jury but her supervisors at the SEC, and absent proof of unlawful discriminatory or retaliatory motive, their actions are not reviewable.

Judge Pratt's Order makes clear that, as a condition precedent to Broderick being transitioned into Grade 15 responsibilities, she would need to demonstrate the capabilities commensurate with that job level. The entity tasked with making that determination is not Broderick, but her supervisors. In the absence of any proof of illegal discrimination, this Court will not supplant the determinations of those persons charged with supervising and evaluating Plaintiff's skills as an appellate advocate, or review their decisions that Plaintiff should not have supervisory responsibilities.

██ In addition, relief under this Order is appropriate only following a finding of Civil contempt. In order to succeed in this regard, the Plaintiff must demonstrate (1) the existence of an order that is clear and reasonably specific, and (2) that the alleged contemner violated the order. *See Armstrong v. Executive Office of the*

*President,* 1 F.3d 1274, 1289 (D.C.Cir. 1993). In examining the Plaintiff's claim, the Court will proceed with caution, as a finding of civil contempt is a "potent weapon." *Joshi v. Professional Health Services, Inc.,* 817 F.2d 877, 879 n. 2 (D.C.Cir. 1987). The party seeking contempt must prove the elements by clear and convincing evidence, rather than the preponderance of the evidence standard typical to civil cases. *See NLRB v. Blevins Popcorn Co.,* 659 F.2d 1173, 1183–1184 (D.C.Cir.1981). Furthermore, if the order contains any ambiguities, the Court must resolve those issues in favor of the party against whom contempt is sought. *See United States v. Microsoft Corp.,* 980 F.Supp. 537, 541 (D.D.C.1997).

Broderick asserts that she is entitled to a promotion by virtue of paragraph 7 of the Joint Order (Opposition. at 22–24.), which states, "A transfer to a position in the Division of Enforcement or the Office of the General Counsel at the agreed-upon GM–15 level, with appropriate work assignments, on-the-job training, evaluation standards, and increased responsibilities over time as she acquires the training and experience and as she demonstrates the capabilities to assume such responsibilities." Plaintiff's understanding of the Order is incorrect. First, Judge Pratt's Order regarding promotions due to Broderick is only "clear and reasonably specific" that the promotions should occur *after* she has attained the requisite skills and *demonstrates* certain capabilities. Even if this Court believed that Broderick had the requisite skills to warrant additional duties, and that this determination was an appropriate one for the Court to make in the first instance, the Court cannot ignore the fact that the phrase "appropriate work assignments, on-the-job training, evaluation standards, and increased responsibilities" is extremely subjective and imprecise. The Court does

not presume to possess the institutional competence to police the SEC in providing Broderick with "appropriate work assignments, on-the-job-training, evaluation standards, and increased responsibilities." *Broderick,* 685 F.Supp. at 1269.

The Joint Order proposed by the parties and signed by Judge Pratt does not place upon the SEC specific directives, from which this Court could conduct a *post hoc* assessment of the SEC's compliance or non-compliance lack thereof. Instead, the Joint Order places upon the SEC general guidelines regarding future interactions with Plaintiff Broderick. Furthermore, the SEC's assessment of Broderick, as not yet possessing the requisite skills, seems to the Court to be at least evenhanded and fair, and probably substantively correct. Therefore, the Court does not believe that the Plaintiff has met her burdens for a showing of civil contempt.

## IV. CONCLUSION

Catherine Broderick seems wholly dissatisfied with the way that she has been treated by her superiors at the SEC. Broderick's first lawsuit was based on legitimate claims of misconduct. Broderick's instant claim is far different. Here Broderick is attempting to cling to her previous successes under Title VII to force the SEC to make accommodations for her. Title VII of the Civil Rights Act is a delicate balancing of employees rights to be free from discrimination and retaliation and the employer's rights to conduct their business, or agency in the most effective, efficient manner they see fit. Title VII is most certainly a protection against unlawful discrimination and retaliation, not a vehicle for checking day to day decisions of an agency, particularly as they relate to hiring, firing, promoting, reprimanding, or evaluating their employees. Additionally, once an individual has made a successful

case of wrongdoing under Title VII, as Broderick did in 1988, they are not forever free from comment or criticism in the ordinary course of their employer/employee relationship. They must still establish a *prima facia* case of retaliation. Broderick has failed in this task and has failed to refute, as pretextual, the SEC's explanation for its actions.

For these reasons, the Defendant's Motion for Summary Judgement is hereby **GRANTED.**