# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 2, 2005      Decided February 10, 2006

No. 04-5404

CATHERINE A. BRODERICK,
APPELLANT

v.

WILLIAM B. DONALDSON, CHAIRMAN, SECURITIES AND
EXCHANGE COMMISSION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00159)

———

*Richard L. Swick* argued the cause for appellant. With him
on the briefs was *Ellen K. Renaud*.

*Peter D. Blumberg*, Assistant U.S. Attorney, argued the
cause for appellee. With him on the brief were *Kenneth L.
Wainstein*, U.S. Attorney, and *R. Craig Lawrence*, Assistant
U.S. Attorney. *Michael J. Ryan*, Assistant U.S. Attorney,
entered an appearance.

Before: HENDERSON, ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Catherine Broderick filed suit against her employer, the Securities and Exchange Commission (SEC), alleging retaliation under Title VII of the Civil Rights Act of 1964 as well as violations of a 1988 court order issued in her previous sexual harassment suit against the SEC. The district court granted summary judgment against Broderick on the retaliation claim and declined to hold the SEC in contempt for the alleged violations of the order. Broderick now appeals both decisions.

We find the district court did not err in granting summary judgment to the SEC, as Broderick has not stated a prima facie case of retaliation. Additionally, we find the district court did not abuse its discretion in deciding not to hold the SEC in contempt of the 1988 order. We therefore affirm.

I

Catherine Broderick won a sexual harassment suit against the SEC in 1988. *Broderick v. Ruder*, 685 F. Supp. 1269, 1280-81 (D.D.C. 1988). After her victory, the district court entered an order entitling Broderick to a "promotion to GM-15," a "title commensurate with GM-15 status," and a

> transfer to a position in the Division of Enforcement or the Office of the General Counsel at the agreed-upon GM-15 level, with appropriate work assignments, on-the-job training, evaluation standards, and increased responsibilities over time as she acquires the training and experience and as she demonstrates the capabilities to assume such responsibilities.

*Broderick v. Ruder*, No. 86-1834, 1988 WL 66210, at *1 (D.D.C. June 16, 1988). The order also specified that the SEC would provide two sets of performance standards, one detailing

"the initial duties and responsibilities assigned to [Broderick] in light of her current training and experience," and the other setting forth "the full duties and responsibilities she will be expected to assume after she acquires the training and experience and demonstrates the proficiency necessary to assume those duties and responsibilities." *Id.* at *1 n.1. Consistent with this order, Broderick (who had previously been employed as an attorney at the GS-13 level) was given a GM-15 position in the Appellate Group of the Office of the General Counsel, with the newly-created job title "counsel to the assistant general counsel." Broderick has remained in that position since 1988.

Broderick now claims she "did not get a fresh start in the Appellate Group," Appellant's Br. at 11, because "a lot of people" from that office attended her sexual harassment trial, and some were "associate[s]" of attorneys in her former office, *id.* at 11-12. Jacob Stillman, head of the Appellate Group, allegedly said at some point that Broderick was "here because of the lawsuit. And, you know, we didn't want her here but she's here. And she gets paid at this level and she can't do the work." Despite her unique title and higher pay grade, Broderick's duties, preparing first drafts of briefs, were essentially equivalent to those of a GS-13 staff attorney. A staff attorney's briefs are typically reviewed by an assistant general counsel or a senior litigation counsel, and then by either the solicitor (Stillman) or his deputy. Broderick's duties were also similar to those of a special counsel (a GS-14 position), except that a special counsel may at times supervise another attorney's work and may have his work reviewed directly by the solicitor or the deputy solicitor.

Broderick's performance evaluations for the years 1995-2000 all rated her as "outstanding" overall, the highest possible rating. In all six of those years, she was rated as "outstanding" in four of five categories: research, oral communications,

writing, and compliance with administrative requirements. In the fifth category, analysis, she received an "exceeds fully successful" rating each year, the second-highest possible rating. As of 2000, Broderick was still being evaluated according to the initial set of performance standards that were drafted in response to the 1988 order.

At least four of Broderick's supervisors have stated that they do not think she should be in a supervisory position: Jacob Stillman ("I don't think that given those concerns [about her analysis] that she should be supervising people."), Katharine Gresham ("I doubt [Broderick could handle a supervisory role] . . . [b]ecause she still needs to be supervised."), Mark Pennington ("[T]o the extent that being a senior litigation counsel required [a] supervisory role, . . . I think [Broderick's] legal analysis wouldn't be strong enough."), and Randy Quinn ("I guess I would not feel completely comfortable" with Broderick supervising another attorney.). In 1996 and 1998, Broderick applied for vacant assistant general counsel positions but was not selected. On June 12, 1998, Broderick sent a memo to her supervisors in the Appellate Group and to the Office of Equal Employment Opportunity, complaining that she had been with the Appellate Group for ten years without being promoted. She requested "a change in job title and position commensurate with [her] seniority, experience, and outstanding performance appraisals." She also requested that her "career ladder be clarified, since it [was] unclear to [her] how [she was] expected to move into the supervisory ranks when the entry level is at the GS-14 level."

In December 1999, two senior litigation counsel vacancies in the Appellate Group were announced; Broderick submitted an application but was not selected. Hope Augustini and Rada Potts, two other Appellate Group attorneys, were chosen for the positions on February 8, 2000. Broderick was informed of the

decision that same day, and she contacted an equal employment opportunity (EEO) counselor in order to complain. On June 8, 2000, Broderick, Jacob Stillman, and Katharine Gresham participated in a mediation session connected with Broderick's EEO complaint.

Broderick allegedly became "angry" and "unfriendly" toward Gresham after Gresham became aware of Broderick's EEO complaint. On July 13, 2000, Stillman sent Broderick a memo claiming that when Gresham tried to discuss the situation with Broderick, Broderick "became hostile, raised [her] voice, and made highly inappropriate comments about Katharine's mother and suggestions to Katharine that she seek psychological assistance." The memo cautioned Broderick that her "recent course of conduct toward Katharine Gresham [was] unacceptable and [was] inconsistent with the requirements of [her] performance standards." Broderick disputes this account, claiming that she merely responded to Gresham's request that they be friends. The memo was not placed in Broderick's personnel file, but the incident was subsequently mentioned in her 2001 evaluation.

## II

Broderick filed suit against the SEC on January 29, 2002, claiming retaliation in violation of Title VII of the Civil Rights Act of 1964, as well as violations of the 1988 court order. She requested a finding of civil contempt against the SEC for violating the 1988 order, with compensatory damages of $300,000 plus interest, as well as additional monetary penalties until the SEC complied with the order. Broderick also requested a retroactive assignment to a management position with backpay and benefits, retroactive awards and bonuses, and corrections to her personnel file.

The SEC moved for summary judgment on Broderick's retaliation claim; the district court granted that motion on September 20, 2004. *Broderick v. Donaldson*, 338 F. Supp. 2d 30, 48 (D.D.C. 2004). The court held that Broderick had failed to exhaust her administrative remedies with respect to any allegedly adverse actions that occurred before December 24, 1999. *Id.* at 39-40. Next, the court held Broderick had failed to demonstrate a prima facie case of retaliation, because only the previous lawsuit qualified as a protected activity, only the denials of her applications for supervisory positions constituted adverse actions, and Broderick had not shown a causal connection between the first two elements. *Id.* at 40-44. Alternatively, the court found that even if Broderick had stated a prima facie case of retaliation, the SEC had proffered non-discriminatory justifications for its actions, which Broderick had not rebutted. *Id.* at 44-46.

The court also declined to hold the SEC in contempt for alleged violations of the 1988 court order. *Id.* at 46-47. Finding no proof of discriminatory motives, the court held that it could not review the SEC's determination that Broderick had not progressed professionally to the point where she should be given additional responsibilities. *Id.* at 46. Even assuming both that Broderick had made the requisite professional progress and that the court (rather than the SEC) should make the determination of such progress, the court found the language of the 1988 order too "subjective and imprecise" for a finding of civil contempt. *Id.* at 47. Finally, the court determined "the SEC's assessment of Broderick, as not yet possessing the requisite skills . . . [was] at least evenhanded and fair, and probably substantively correct." *Id.*

## III

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We review the district court's grant of summary judgment de novo, and we will affirm only if, viewing the evidence in the light most favorable to Broderick, we find that no reasonable jury could find in her favor. *See Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005).

"All personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Retaliation against an employee who alleges such discrimination is prohibited by 42 U.S.C. § 2000e-3(a), which states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

A plaintiff claiming unlawful retaliation must prove her case under the burden-shifting framework established by *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005). Under this framework,

> the plaintiff must establish the three elements of a prima facie case of retaliation: first, that she engaged in protected activity; second, that she was subjected to adverse action by the employer; and third, that there existed a causal link between the adverse action and the protected activity. Such a showing raises a rebuttable presumption of unlawful discrimination and shifts to the defendant the burden to rebut the presumption by asserting a legitimate, non-discriminatory reason for its actions. If the defendant does so, the *McDonnell Douglas* framework disappears, and we must decide whether a reasonable jury could infer intentional discrimination from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were discriminatory or that the non-discriminatory justification was pretextual.

*Id.* (internal quotation marks and citations omitted).

We first examine whether Broderick engaged in activity protected by Title VII. Broderick's previous sexual harassment lawsuit clearly qualifies, as she "made a charge," 42 U.S.C. § 2000e-3(a), of unlawful discrimination based on sex. *See Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003); *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 483 n.8 (7th Cir. 1996). Less clear is whether the June 1998 memo that Broderick sent to her supervisors and the EEO office also qualifies as protected activity. Not every complaint garners its author protection under Title VII. *See Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005) (stating that commenting about absence of black employees, without alleging discrimination, was insufficient to qualify as protected activity); *Sitar v.*

*Ind. Dep't of Transp.*, 344 F.3d 720, 727-28 (7th Cir. 2003) (stating that complaining about being "picked on," without mentioning discrimination or otherwise indicating that gender was an issue, does not constitute protected activity, even if the employee honestly believes she is the subject of sex discrimination); *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276 (2d Cir. 1998). While no "magic words" are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition. Broderick did not allege in her memo that she was currently being discriminated against or that she was being retaliated against for her previous lawsuit, stating only that she found "being treated as a staff attorney after nineteen years" working for the SEC to be "embar[r]assing, humiliating and downright insulting." At the same time, Broderick did send a copy of her memo to an EEO official, and the memo did incidentally mention her previous lawsuit.[1] Yet regardless of whether Broderick engaged in only one protected activity (the lawsuit) or two (the lawsuit and the June 1998 memo), she has established the first element of a prima facie case. As we discuss next, however, she has not satisfied the second element. In the absence of a finding that the plaintiff has suffered adverse action, a retaliation claim fails as a matter of law. *See Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1424 (D.C. Cir. 1988).

To challenge an adverse action, an employee of a federal agency must "initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory, or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). As her counsel

---

[1] Broderick's June 1998 memo stated that a promotion would not "entail additional cost" to the SEC, because she was "already being paid at a GS-15 level by virtue of [her] lawsuit against the Commission."

conceded at oral argument, Broderick failed to exhaust her administrative remedies in a timely manner with respect to her first two non-selections for promotions, Recording of Oral Arg. at 17:21-17:34; those incidents, in 1996 and 1998, occurred several years before she contacted an EEO counselor. In her briefs, Broderick argued that her 2000 non-selection for one of the senior litigation counsel positions qualified as an adverse action; this argument appeared to be a complaint that she had been denied advancement in the form of additional duties, i.e., supervising other attorneys. At oral argument, however, her counsel conceded that this lawsuit "boils down to" Broderick wanting "to have her work reviewed by the top people" in the office. *Id.* at 8:04-8:20, 10:17-10:30. Rather than stemming from one particular non-selection, this complaint could, in her counsel's words, be remedied "with the stroke of the pen if [her supervisors] want[ed] to do that," as they could alter her position description to allow her to submit her briefs to a more senior attorney. *Id.* at 42:20-42:32. Her counsel also conceded the senior litigation counsel position for which Broderick applied may or may not have entailed supervisory duties, depending on how cases would be assigned. *Id.* at 17:37-17:45, 41:34-41:48.

In essence, these concessions clarify that Broderick is pointing to the denial of reduced supervision, rather than the 2000 non-selection, as an adverse action. Yet allowing Broderick to submit her briefs to a different supervisor would entail changes in her supervisors' duties, not her own. Similarly, Broderick is not alleging that she was denied a higher salary, as she is already paid at the GS-15 level, just as she would have been had she received the position for which she applied. Her claimed injury is not the denial of a promotion—new duties or an increase in pay—but of a new supervisor.

Broderick cannot use this limited claim to satisfy the second element of her prima facie case. "An 'adverse employment

action' within the meaning of *McDonnell Douglas* is 'a signifi-cant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsi-bilities, or a decision causing significant change in benefits.'" *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). "[N]ot everything that makes an employee unhappy is an actionable adverse action. Minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would otherwise form the basis of a discrimination suit." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (internal quotation marks omitted). While "being 'aggrieved' is necessary to state a claim for retaliation, . . . it is not sufficient to demon-strate that a particular employment action was adverse." *Holcomb v. Powell*, No. 04-5216, slip op. at 20 n.4 (D.C. Cir. Jan. 10, 2006) (construing 42 U.S.C. § 2000e-16(c)). The employee must "experience[] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)). "Mere idiosyncracies of personal preference are not sufficient to state an injury." *Brown*, 199 F.3d at 457. Refusing to allow Broderick to submit her briefs directly to a top supervisor did not result in "significantly different responsibilities," *Taylor*, 350 F.3d at 1293, or "objec-tively tangible harm," *Forkkio*, 306 F.3d at 1131, and therefore

cannot qualify as an adverse action.[2] Broderick has thus failed to state a prima facie case of retaliation.[3]

## IV

"The power to punish for contempts is inherent in all courts; its existence is essential to . . . the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1874). "The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power." *Id.* "[C]ivil

---

[2] Similarly, the disciplinary memo that Stillman sent to Broderick in July 2000 does not qualify as an adverse action, as it did not affect her grade, salary, duties, or responsibilities. *See Brown*, 199 F.3d at 458.

[3] If Broderick had not conceded that she was merely challenging the chain of review for her own briefs rather than her lack of an opportunity to supervise others, her 2000 non-selection might have qualified as an adverse action. However, even if Broderick had not abandoned that position at oral argument, and assuming *arguendo* that Broderick established the third element of the prima facie case (a causal connection between her protected activity and the adverse action), her retaliation claim would still have failed. The SEC put forward a legitimate, non-discriminatory justification for not giving her greater responsibility: her supervisors did not feel that she had demonstrated the abilities needed to supervise other attorneys' work, which could have been required had she been selected for the senior litigation counsel position. Broderick failed to present sufficient evidence on which a reasonable jury could decide that this proffered justification was mere pretext and that the SEC's actual motivation was discriminatory. Broderick did not demonstrate that she was qualified for such a position, let alone that she was more qualified than the candidates who were selected. *See, e.g.*, *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294-95 (D.C. Cir. 1998) (en banc).

contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous, and the violation must be proved by clear and convincing evidence." *Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (citation and internal quotation marks omitted). "On appeal, the petitioner must prove that the trial judge abused his discretion in refusing to order civil contempt." *Wash.-Balt. Newspaper Guild, Local 35 v. Wash. Post Co.*, 626 F.2d 1029, 1031 (D.C. Cir. 1980).

The district court did not abuse its discretion in refusing to hold the SEC in contempt. The 1988 order was silent as to the standard for determining when Broderick would be considered ready for additional responsibilities, let alone what the nature of those responsibilities would be. Of necessity, the SEC had to rely on its own assessments of Broderick's progress in determining whether to give her additional duties. The district court found the SEC's assessments to be "at least evenhanded and fair, and probably substantively correct," based on the evidence in the record. *Broderick*, 338 F. Supp. 2d at 47. Both prongs of the *Armstrong* standard therefore militate against a finding of contempt: the 1988 order was not "clear and unambiguous" as to what was required, and Broderick failed to provide clear and convincing evidence that the SEC did not give her responsibilities to which she was entitled.[4] Under these circumstances, the district court would have abused its discretion if it *had* held the SEC in contempt. As it stands, the district court did not err in ruling against Broderick in this regard.

---

[4] Broderick points to emails and notes from other attorneys in the Appellate Group in which her work is praised. However, evidence that Broderick has performed her current job admirably on at least some occasions falls far short of clear and convincing evidence that she is entitled to additional duties.

14

V

For the above reasons, we affirm the judgments of the district court.

*So ordered.*