Gwendolyn B. SMITH, Plaintiff,

v.

The DISTRICT OF COLUMBIA, Defendant.

No. CIV.A. 02–481(JMF).

United States District Court, District of Columbia.

June 25, 2003.

Janet Rose Cooper, Hyattsville, MD, for plaintiff.

Michael Alan Stern, Office of Corporation Counsel, D.C., Sharlene E. Williams, Office of the Corporation Counsel, Tonya A. Robinson, Corporation Counsel, Washington, DC, for plaintiff.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case was referred to me by Judge Huvelle for all purposes including trial pursuant to LCvR 73.1(a). Currently pending is *Defendant's Motion for Summary Judgment*. For the reasons set forth below, defendant's motion for summary judgment will be denied.

## STATEMENT OF FACTS NOT IN DISPUTE [1]

Plaintiff, Gwendolyn B. Smith ("Smith"), began working for defendant, the District of Colombia, Department of Mental Health ("Department"), as a Mental Health Specialist in March 1971. Answer ¶ 10. During the time of her employment relevant to

---

1. The pleadings contain exhibits with contradictory numbering. Therefore, plaintiff's exhibits will be referred to by description of the document and defendant's exhibits will be referred to by letter as denoted in its motion.

this lawsuit, Smith's rank was a DS–0601–11. *Id.* at ¶ 4.

Leaving to serve her country in the Gulf War, she continued her employment for thirty years until her recent retirement. *Plaintiff's Opposition to Summary Judgment* ("P.Opp."), *Plaintiff's Responses to Defendant's First Discovery Interrogatories* at ¶ 14; Answer ¶ 10. While serving in the Gulf War, Smith contracted an upper respiratory bacterial infection. P. Opp., *May 18, 1999 Letter From Dr. Singh* at 1. The extreme medication required to treat the infection is believed to have caused Smith's type II diabetes and hypertension. *Id.* Smith also suffered an injury to her back and shoulder in the line of duty. P. Opp., *December 4, 1997 Letter From Secretary of the Army* at 1.

Sometime in the year 2000, after returning from the war, Smith was informed by the Department that she was required to make home visits to her client's houses for the purpose of completing housing inspections. *Defendant's Motion for Summary Judgment* ("D.Mot."), *Smith Deposition* at 17–18. Initially, Smith claimed that this type of visit was not part of her job function and, therefore, would not complete visits for the purpose of inspecting client housing. *Id.* She did, however, continue to make home visits when her patients "decompensated" into an emergency situation. *Id.*

Shortly thereafter, on May 16, 2000, Smith filed a complaint with the District of Colombia Office of Human Resources ("OHR") which was cross-filed with the Equal Employment Opportunity Commission ("EEOC") and became charge # 100–A0–0702. Answer ¶ 7. In her complaint, Smith alleged discrimination based on disability, claiming she was disabled as a result of injuries and conditions she sustained during the war. *Id.* Plaintiff's complaint was dismissed on November 20, 2000, because the EEOC was unable to determine whether Defendant violated either Title VII or the Americans with Disabilities Act ("ADA"). *Id.*

Smith requested accommodations for her disabilities from defendant, including a request that she be excused from making home visits, on January 3, 2001. D. Mot., Exhibit C at 2. Dr. Myrtle Yearwood ("Yearwood"), Smith's Manager, sent the request to the OHR for consideration on January 10, 2001. D. Mot., Exhibit D at 1. Before the OHR could respond to the request, Yearwood was notified by Venida Hamilton ("Hamilton"), the Region I/II Director, of Smith's continued failure to make home visits. D. Mot., *Yearwood Deposition, March 12, 2001 Memorandum from Venida Hamilton to Dr. Yearwood* at 1. Until Yearwood received notice from the OHR regarding the requested accommodations, she assigned Smith's home visits to other case managers beginning March 15, 2001. D. Mot., *Yearwood Deposition, March 15, 2001 Memorandum from Dr. Yearwood to Venida Hamilton* at 1.

On March 22, 2001, David Prince ("Prince"), the EEO specialist, concluded that (1) Smith met the criteria of an individual with a disability, but was not a qualified individual with a disability; (2) Smith was nevertheless entitled to some accommodation; and (3) her medical condition did not substantially limit her ability to perform the essential functions of her position as a Mental Health Specialist. D. Mot., *Smith Deposition, March 22, 2001 Letter from David Prince to Gwendolyn Smith*, Exhibit 7 at 2. Smith signed a performance evaluation, which was completed by Yearwood and made record of Smith's assertion that she could not perform home visits because of her disability. D. Mot., Exhibit E at 1.

In June 2001, Smith's entire case load was given to other workers within her Department. Answer ¶ 11. Smith was

notified on June 14, 2001, that she was going to be reassigned to the Comprehensive Psychiatric Emergency Program ("CPEP") for 120 days beginning on June 20, 2001. D. Mot., Exhibit F at 1. However, Smith refused to accept the reassignment and on June 19, 2001, sent a letter to Hamilton explaining that her doctor, Dr. Dpinder Singh ("Dr.Singh"), instructed her to remain on sick leave. D. Mot., *Singh Deposition, Letter from Gwendolyn Smith to Mrs. Venida Hamilton* at 1. Smith requested advance sick leave, on July 16, 2001, until her accommodation request was settled. D. Mot., Exhibit A at 1–3. Yearwood denied the request and suggested that Smith request Leave Without Pay ("LWOP") instead. *Id.*

On July 9, 2001, prior to making her request for advanced sick leave, Smith was informed by defendant that they had begun the process of terminating her. *Id.* at 4. On August 14, 2001, notice of recommendation for termination had been given to the Division of Human Resources and was subsequently sent to Smith's attorney. *Id.* at 4–5. Documented in the recommendation were a number of incidences of Smith's refusal to follow the direction of her immediate supervisor, Mr. Kevin Martin ("Martin"), D. Mot., Exhibit A at 6–9.

Smith filed a second complaint with the OHR and the EEOC on November 28, 2001, alleging retaliation for filing the initial complaint as well as failure to implement reasonable accommodations. *Id.* at 9. The second complaint became charge # 100–A2–00144. Complaint at ¶ 8. It too, however, was dismissed because the EEOC found insufficient evidence to support a charge of retaliation, and on December 18, 2001, the EEOC issued a right to sue letter to Smith. *Id.* On March 15, 2002, Smith initiated this lawsuit against defendant.

## Analysis

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The burden of establishing that there is no genuine issue of material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Nat'l Cable Television Ass'n, Inc. v. Fed. Communications Comm'n,* 479 F.2d 183, 186 (D.C.Cir.1973). The substantive law determines which facts are material, thus, only factual disputes that affect the outcome of the case will preclude summary judgment. *Anderson et al. v. Liberty Lobby Inc. et al.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When a party fails to make a sufficient showing of an essential element of their case, for which they have the burden of proof at trial, summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548. When the evidence is insufficient for a jury to reasonably find in favor of the nonmoving party, there is no need for a trial. *Anderson et al. v. Liberty Lobby Inc. et al.,* 477 U.S. at 250, 106 S.Ct. 2505.

Since, as will be explained, the ADA requires an employer to provide reasonable accommodations to qualified persons with a disability, 42 U.S.C. § 12111(8) (2000), the first question presented is whether plaintiff can produce sufficient evidence to permit a jury to conclude that she is disabled.

## I. Disabled Person

■ Title I of the ADA defines disability with respect to an individual as: "A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; B) a record of such an impairment; or C) being

regarded as having such an impairment." 42 U.S.C. § 12102(2) (2000).

## A. Impairment

 In the first instance, it is not enough that the plaintiff merely has an impairment. The disability must substantially limit one or more major life activities. *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The definitions included in the Department of Health, Education, and Welfare's ("HEW") regulations for the Rehabilitation Act can be used to interpret the meaning of "impairment" and "major life activity" as used in the ADA. *Id.* at 194–95, 122 S.Ct. 681.

A physical impairment is defined as "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine." 45 C.F.R. § 84.3(j)(2)(i) (2002). Included in the list of impairment is diabetes. 28 C.F.R. § 41.31(b)(1) (2002).

Although Smith has diabetes, the Supreme Court has held that considering whether a person is disabled is an individualized inquiry, and a mere diagnosis of a disease does not mean a person is disabled. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483–84, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). If this were the case, almost all diabetics would be considered disabled because if they did not test their blood and administer insulin, their condition would affect their major life activities. *Id.* Therefore, in order to be termed a disability, Smith's diabetes must be shown to have substantially limited her major life activities.

Additionally, Dr. Singh certified that Smith has a respiratory ailment that is very resistant to medication. P. Opp., *May 18, 1999 Letter from Dr. Dpinder Singh* at 1. Furthermore, according to the Department of Veterans Affairs, Smith has back and shoulder injuries, which constitutes an affliction of the musculoskeletal system. P. Opp., *Rating Decision* at 1–3. Since both the respiratory and musculoskeletal system are listed by the HEW regulation, there is evidence that Smith has an impairment. Since she does, the next question is whether it affects a major life activity.

### 1. Major Life Activity

The HEW regulations provide the following list of functions as examples of major life activities: "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii). In this case, a jury might find Smith disabled because her impairment affects her ability to perform the major life-activity of walking. As evidence of this interference, Dr. Singh has certified that Smith cannot walk long distances or climb stairs because of her back and shoulder ailments. P. Mot., *Smith Deposition, October 19, 2001 Certificate to Return to Work and/or School* at 1. Smith's uncontrollable diabetes often leaves her fatigued, similarly affecting her ability to walk. *Id.* Applying the definitions noted above, and taking into consideration her doctor's testimony, a jury could find that Smith has an impairment that affects the major life activity of walking.

### 2. Substantially Limits

Finally, it must be determined whether Smith's impairments substantially limits her ability to walk. According to the EEOC, "substantially limits" means:

[U]nable to perform a major life activity that the average person in the general population can perform; or significantly restricted as to the condition, manner or duration under which an individual can

perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii) (2002).

Furthermore, the regulation instructs that the following be taken into consideration when assessing whether an impairment substantially limits a major life activity: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(i)-(iii)(2002).

In this case, Dr. Singh certified on October 19, 2001, that Smith suffers from the following:

> The patient also [in addition to diabetes] has other medical conditions which would require certain work restrictions. She easily becomes tired and fatigued, has a breathing condition requiring use of a bronchodilator inhaler several times a day; and has a chronic back and shoulder impairment that's painful and restricts physical mobility in walking, climbing stairs, and so forth cannot climb stairs, perform excessive walking and standing.

P. Opp., *Smith Deposition, Certificate to Return to Work and/or School* at 1. Unlike an average person in the general population, Dr. Singh's description indicates that Smith cannot perform excessive walking or standing. *Id.* Also, the impairments appear to be permanent. Smith's respiratory ailment, which continues to plague her, has failed to respond to conventional treatment. P. Opp., *May 18,1999 Letter from Dr. Singh* at 1. The extreme treatment has lead to her suffering from type II diabetes. *Id.* In addition, the doctors' reports from Smith's continued visits to the Veteran's Affairs hospital indicate that her impairment from the back and shoulder injury is getting worse with time. P. Opp., *Rating Decision* at 1–3.

Thus a jury, if it credited this evidence, could find that: (1) Smith suffers from a three-fold impairment: diabetes, shoulder and back injuries, and a respiratory infection; (2) together, these impairments limit her ability to walk, which is a major life activity; (3) the limiting effect that the impairment has is substantial; (4) Smith cannot walk in a manner that is comparable to a non-disabled person; and (5) Smith's impairments are permanent and have worsened with time. A jury could, therefore, find that Smith is disabled under the ADA.

### B. Record of Impairment

■ In addition, defendant challenges whether plaintiff provided adequate medical documentation, complaining that plaintiff only provided her Veterans Administration Certification of Disability and a letter from Dr. Dpinder Singh, dated October 19, 2001. *Plaintiff's Opposition to Summary Judgment,* at Exhibit 3.

While the Certification of Disability only indicates that a 50% disability exists, Dr. Singh's letter is detailed. In the first paragraph, the doctor explains the consequences of her diabetes and indicates that, as a result, she has "a physical impairment that substantially limits several major live activities." *Id.*

In the next paragraph, he describes the consequences of her other medical conditions that I have summarized above. He indicates that these conditions restrict her "physical mobility in walking, climbing stairs ...." *Id.* According to the doctor, she could not climb stairs or perform excessive walking. Given that the home visits contemplated would have been in the District of Columbia, where entry to most homes involve climbing stairs, Dr. Singh's letter creates a genuine issue of material

fact as whether it provided adequate medical documentation for the accommodation sought.

### C. Regarded as Having Such an Impairment

Considering that Smith sufficiently establishes that she is disabled under subsections A and B, no discussion on whether or not she is regarded as having such an impairment will be included at this time.

### II. Qualified Individual With a Disability

■ Smith is not protected from employment discrimination unless she is a *qualified* individual with a disability. 42 U.S.C. § 12112(a) (2000)(emphasis added). A qualified individual with a disability is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (2000).

At issue in this litigation are two functions of the Mental Health Specialist position: (1) the ability to work with supervisors and co-workers; and (2) the completion of home visits. Essential functions of a job are the position's fundamental job duties. 29 C.F.R. § 1630.2(n)(1) (2002). A non-exclusive list of reasons for the essential nature of a function are: (1) the position exists to perform the function; (2) only a small number of employees are available to complete the function; and (3) the function is highly specialized and the employee holding the position was hired for their expertise or ability to perform the special function. 29 C.F.R. § 1630.2(n)(2)(i)-(iii) (2002). Deference should be given to the employer in identifying the essential functions of a particular job. 29 C.F.R. § 1630.2(n)(3)(i) (2002). The amount of time spent performing the function should also be considered in assessing the essentiality of

any function. 29 C.F.R. § 1630.2(n)(3)(iii) (2002).

Defendant argues that because plaintiff would not make home visits, an essential function of her position, she was not a qualified individual with a disability. In making that argument, defendant follows the decision by Prince, the EEO specialist for DHR.

Prince concluded that, although plaintiff was disabled, she was not entitled to insist that she be relieved of the obligation to make home visits as an accommodation because home visits were an essential function of her position. But, it must be remembered that the central purpose of the Americans with Disabilities Act is to require employers to provide reasonable accommodation to permit disabled employees to perform the essential functions of their jobs. That a person cannot perform an essential function of her position without accommodation is not a defense to a violation of the Act. If it were, the Act would be meaningless.

An analogy is helpful. All would agree that being able to read is an essential function of being a judge, lawyer or law professor. Yet, there are many persons who have ennobled those professions even though they were blind and, therefore, could perform their jobs only by being accommodated by books in braille, computer software, or the hiring of a reader at their employer's expense. Thus, they were disabled but capable of every essential function of their jobs because of an accommodation. Their situation is to be distinguished from an illiterate person who cannot perform these jobs, irrespective of either a physical disability or an accommodation.

Thus, plaintiff, if deemed a disabled person, has the right to insist that she be provided with a reasonable accommodation to perform the essential functions of her

job, despite her disability. That she cannot perform the essential function without being accommodated is not a defense to this lawsuit.

■ It is in this context that defendant's claim that plaintiff's insubordination and refusal to accept supervision must be addressed. It is one thing when the disability one suffers renders that person unable to get along with others. Since getting along with others and accepting supervision are crucial to every job except, perhaps, to a lighthouse keeper, they are certainly essential functions. If, therefore, a person's disability prevents her from being cooperative and amenable to supervision, and a employer cannot reasonably accommodate that disability, then the disabled person cannot perform an essential function of her position and her discharge is appropriate despite her disability. *Weigert v. Georgetown Univ.*, 120 F.Supp.2d 1, 15 (D.D.C.2000). But, if the disability claimed has nothing to do with being cooperative, then the ADA is completely irrelevant to her discharge.

If an employer fires a person for being insubordinate, that the person was also disabled provides no protection from the firing that had nothing to do with the disability. Disabled persons and their employers are not covered in every aspect of their relationship by the ADA. The employer is not prevented by the ADA from taking action against the employee where that action has nothing to do with the disability and could have been taken against any employee, whether disabled or not. While it is certainly legitimate for the defendant to defend on the grounds that plaintiff did not want to do home visits and is using her disability as a pretense to evade her responsibility, her alleged insubordination has nothing to do with whether those home visits were an essential function of her job.

In my view, whether home visits were essential and, if they were, whether there was a reasonable accommodation, are genuine issues of material fact because the words "essential" and "reasonable" by their very nature involve the sifting and weighing of evidence. That between March 15, 2001, and March 22, 2001, while waiting to hear back from Prince, defendant reassigned plaintiff's home visits to other case workers while allowing plaintiff to continue working,[2] at least raises the issue of whether trading responsibilities among case workers was or was not reasonable. Weighed against that is the information summarized by defendant of the importance of home visits in complying with the requirements imposed by this Court with reference to the care of the mentally ill in the community. The weighing of these considerations is a pristine jury function.

### III. Retaliation

■ To establish a *prima facie* case of retaliation the plaintiff must show: "(1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) a causal connection existed between the two." *Brown v. Brody,* 199 F.3d 446, 452–53 (D.C.Cir.1999).

■ Reading plaintiff's complaint indulgently in her favor, she seems to be complaining of retaliation because of her filing an EEOC charge in June[3] 2000. Complaint, ¶ 10. Smith, however, was never terminated from her position as a Mental Health Specialist; she appears to have retired before the termination proceedings were complete. The only personnel ac-

---

**2.** D. Mot.*, Yearwood Deposition, March 15, 2001 Memorandum from Dr. Yearwood to Venida Hamilton* at 1.

**3.** She must mean May 2000.

tions taken against her after she filed her complaint on May 16, 2000, were her temporary detail to CPEP on June 20, 2001, and the denial of her request for advanced sick leave on July 16, 2001. The temporary reassignment without diminution in pay or benefits is not an adverse employment action. *Brown v. Brody*, 199 F.3d at 457.

■ While the denial of her request for advance sick pay is an adverse employment action, it occurred more than a year after she filed her complaint in May 2000. While action that follows quickly upon the filing of a complaint may permit the inference of retaliation, a delay of more than one year hardly permits that inference. More to the point, on August 14, 2001, the Department of Mental Health indicated that District Personnel Regulations did not permit the advancement of 328 sick leave hours to an employee. *Defendant's Motion for Summary Judgment*, Exhibit A, *Letter of Herbert M. Joseph, Jr.* Plaintiff has not advanced a single reason or scrap of evidence permitting the inference that this statement is false and a pretense for retaliation. Since she has not met that burden, her retaliation claim fails. *St. Mary's Honor Ctr. et al. v. Hicks*, 509 U.S. 502, 515–16, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

## IV. Disability Retirement

Defendant points out that plaintiff has now applied for disability retirement and that Dr. Singh, who wrote the October 2001 letter mentioned above, has certified that plaintiff is completely disabled. Plaintiff dismisses this as nothing more than considering the retirement options she has. That is too cavalier. The Supreme Court has indicated that a party who has asserted that she is completely disabled for one purpose has a specific and demanding burden when she also asserts that she is capable of performing a certain job with a reasonable accommodation:

> Although these cases for the most part involve purely factual contradictions (as to which we do not necessarily endorse these cases, but leave the law as we found it), we believe that a similar insistence upon explanation is warranted here, where the conflict involves a legal conclusion. When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999).

Plaintiff has not met that burden on this sparse record. I will now oblige her to provide defendant's counsel with all applications for disability retirement or other benefits plaintiff has made to any public or private entity in which she has made representations as to her ability or disability to work within seven days. I will expect both parties to argue the significance of these documents in light of the *Cleveland* case at the pre-trial conference.

## CONCLUSION

The *Defendant's Motion for Summary Judgment* is, therefore, denied as to plaintiff's claim under the Americans with Disabilities Act, but granted as to her claim of retaliation.

An Order accompanies this Memorandum Opinion.

## ORDER

Upon consideration of defendant's motion, plaintiff's opposition thereto, and defendant's reply thereto, and in accordance with the accompanying Memorandum Opinion, it is, hereby,

**ORDERED** that *Defendant's Motion for Summary Judgment* [# 19] is **GRANTED** in part and **DENIED** in part. It is further, hereby,

**ORDERED** that the pre-trial conference shall be held on July 11, 2003, at 9:00 a.m. It is further, hereby,

**ORDERED** that the parties shall file the joint pre-trial statement on July 7, 2003.

**SO ORDERED.**