# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 14, 2005      Decided December 6, 2005

No. 04-7082

GWENDOLYN B. SMITH
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00481)

———

*Robin M. Meriweather*, appointed by the court, argued the cause as *amicus curiae* for appellant. With her on the briefs were *David W. DeBruin* and *William M. Hohengarten*.

*L. Saundra White* argued the cause and filed the brief for appellant.

*William J. Earl*, Assistant Attorney General, Office of Attorney General for the District of Columbia, argued the cause for appellee. With him on the briefs were *Robert J. Spagnoletti*, Attorney General, and *Edward E. Schwab*, Deputy Attorney General.

Before: TATEL and BROWN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.[1]

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*:  Gwendolyn Smith, a former employee of the District of Columbia's Department of Mental Health (DMH), filed suit against the District, claiming she was the victim of discrimination and retaliation under the Americans with Disabilities Act (ADA). The district court granted summary judgment to the District on both claims; Smith now appeals. We find the district court properly granted summary judgment on Smith's retaliation claim but abused its discretion by granting the District's late motion for summary judgment on the discrimination claim. We therefore remand the case for trial on the discrimination claim.

I

Smith worked for the DMH as a mental health specialist for over thirty years. During her service in the Gulf War, Smith was diagnosed with a bacterial infection; the treatment for this condition led to diabetes and hypertension. Smith also suffered back and shoulder injuries. After returning to work in June 1994, she informed her supervisors at the DMH of her disabilities and was given a handicapped parking space and permitted to change her work schedule to start at 10:00 a.m. rather than 8:15 a.m.

In Smith's role as a mental health specialist at the DMH, she had to make home visits to patients; this requirement was always part of her job description, but the required frequency of visits increased in 2000. Smith claims her disability prevents her

[1] Senior Circuit Judge Edwards was in regular active service at the time of oral argument.

from making "frequent trips up and down stairs" or "getting in and out of vehicles constantly," and because of these restrictions, she is physically able to make only occasional home visits to patients.

On May 16, 2000, Smith filed a complaint with the D.C. Office of Human Rights and the Equal Employment Opportunity Commission (EEOC), alleging the DMH had discriminated against her by denying her a reasonable accommodation of her disability. In the section of the complaint form designated "cause of discrimination," Smith checked the boxes for "Retaliation" and "Disability." In part, Smith's complaint stated she "believe[d] that [she had] been discriminated against because of [her] disability, in violation of the Americans with Disabilities Act of 1990, as amended." The EEOC dismissed her complaint and issued a "right to sue" letter on November 20, 2000, informing her that she had 90 days to file suit.

On January 3, 2001, Smith requested additional accommodations, including not being counted as "absent without leave" for time she missed, as well as being excused from home visits. On March 12, 2001, a DMH director noted Smith's patients had not been receiving home visits over the previous three months and found this "unacceptable." Smith informed the DMH she was unable to make home visits due to her disability; all of her patients were then assigned to other employees. Later that month, the District sent Smith a letter stating that "conducting 'home visits' [was] an essential function of [her] position." The District found her to be an "individual with a disability,"[2] and thus entitled to reasonable accommodations, but concluded there

---

[2] We express no opinion as to whether Smith's health problems qualify her as disabled under the ADA. This question will have to be resolved on remand.

were "[n]o [p]robable [g]rounds to support a finding that [her] rights in the workplace [were] being violated."

The DMH also filed disciplinary charges against Smith based on her refusal to acknowledge Kevin Martin as her designated supervisor. Smith admitted that she would not accept Martin as her supervisor, claiming he lacked the educational background to give her instructions. Smith stated that if she was given an instruction she viewed as "wrong," she would not comply: "I don't come out and say, no, I'm not going to do it. I just don't do it."

On June 14, 2001, the DMH ordered Smith to report for a 120-day detail at the Comprehensive Psychiatric Emergency Program's (CPEP) Crisis Hotline at D.C. General Hospital. Smith informed the DMH she would be unable to report to the CPEP, claiming the hospital was too far from her home and driving there would "compromise [her] health and place [her] in a position for potential and/or imminent severe medical complications." On July 9, 2001, the DMH notified Smith she had no accumulated leave time available and that it was instituting disciplinary measures against her. On August 14, 2001, the DMH denied Smith's request for an advance of 328 hours of sick leave because regulations did not allow such a large advance and informed her she was going to be terminated. The stated grounds for her removal were "insubordination" (i.e., "refusal to carry out assigned duties and responsibilities"), "inexcusable neglect of duty" (i.e., "negligence in performing official duties, including failure to follow verbal or written instructions"), and "insubordination and discourteous treatment" (i.e., "knowingly making false or unfounded face-to-face and written discourteous statements concerning [her] immediate supervisor").

On October 22, 2001, after the 120-day detail to CPEP would have ended, Smith notified the DMH that she was ready and medically able, given accommodations, to return to work. She was not given another assignment, however, and filed another complaint with the D.C. Office of Human Rights and the EEOC on November 23, 2001. In the section of the complaint form designated "cause of discrimination," Smith again checked the boxes for "Retaliation" and "Disability." Smith alleged that since she filed her first EEOC complaint, the District had "retaliated against [her] by not allowing [her] a reasonable accommodation for [her] disability." On December 18, 2001, the EEOC dismissed Smith's complaint and issued her another "right to sue" letter, stating that she had 90 days to file suit. Smith retired from the DMH before disciplinary actions were finalized.

Smith filed suit in the United States District Court for the District of Columbia on March 15, 2002, alleging disability discrimination and retaliation in violation of the ADA.[3] The District moved for summary judgment on both claims. The district court denied the motion with respect to the discrimination claim, finding genuine issues of material fact as to whether home visits were essential to Smith's job and whether a reasonable accommodation was possible. *Smith v. District of Columbia*, 271 F. Supp. 2d 165, 172 (D.D.C. 2003) (*Smith I*). However, the court granted summary judgment to the District on the

---

[3] In her complaint, Smith claimed the District's acts violated 42 U.S.C. § 2000e-5 *et seq.* (part of Title VII of the Civil Rights Act of 1964) and 42 U.S.C. § 12101 *et seq.* (the ADA). We note that the parties have at times referred to Smith's retaliation claim as arising under Title VII and at other times as arising under the ADA. As Smith alleges that she was retaliated against for filing a complaint of *disability* discrimination, we analyze her retaliation claim under the ADA, namely 42 U.S.C. § 12203(a).

retaliation claim, finding Smith had not established a prima facie case. *Id.* at 173. The court found her temporary reassignment to CPEP was not an adverse action, and Smith did not present "a single reason or scrap of evidence permitting the inference" that her request for sick leave was denied as retaliation rather than because her request exceeded the amount allowed by regulation. *Id.*[4]

The district court had set December 27, 2002, as the deadline for the District to file motions for summary judgment. On April 9, 2004, ten days before the scheduled start of trial, the District again moved for summary judgment, arguing Smith's disability discrimination claim should be dismissed as untimely. The district court granted the motion on April 19, 2004, finding Smith had 90 days after the EEOC sent her first "right to sue" letter to file suit on her disability discrimination claim, but that she had waited almost 16 months to do so. *Smith v. District of Columbia*, No. 02cv00481, 2005 WL 488824, at *1 (D.D.C. Feb. 28, 2005) (unpublished opinion) (*Smith III*). The district court also found Smith's second EEOC complaint alleged only retaliation, not disability discrimination; thus, it held that Smith had not exhausted her administrative remedies with respect to

---

[4] The District later moved for summary judgment on the discrimination claim for a second time, arguing that Smith had submitted a "Total and Permanent Disability Cancellation Request" to the Federal Family Education Loan Program. *Smith v. District of Columbia*, 295 F. Supp. 2d 53 (D.D.C. 2003) (*Smith II*). In that request, Smith had certified she was "totally and permanently disabled, rendering her unable to work, even on a limited basis." *Id.* at 54 (internal quotation marks omitted). The District claimed this statement was incompatible with Smith's current claim that she could still perform the essential functions of her job. *Id.* at 54-55. The district court denied the motion, holding that Smith was not estopped by her previous statement, as the loan cancellation request had not been approved. *Id.* at 55-56.

her attempt to renew her claim of disability discrimination. *Id.* at *2-3. Although Smith protested the District's late filing, the trial court concluded the District's "dilatoriness . . . [did] not amount to the kind of delay and 'game playing' that have led the courts to hold that the defendant has waived the failure to exhaust defense." *Id.* at *3. At the same time, the district court attempted to "cure the prejudice [Smith] suffered without nullifying the congressional policy . . . that the courts enforce the procedural requirements Congress mandated" in the ADA. *Id.* "All of the fees and costs generated since the District's filing of its answer were completely unnecessary," the district court reasoned, as the District could have moved to dismiss the complaint at that early point; hence, the district court ordered the District to pay all costs and attorney's fees incurred by Smith since that point, except those incurred in response to this final motion. *Id.*

## II

As a preliminary matter, we find that we have jurisdiction to hear Smith's appeal. After the district court granted summary judgment on Smith's disability discrimination claim, the parties filed several motions contesting the costs and attorney's fees and asking for reconsideration. Smith also filed a notice of appeal. The District then filed a motion in this court requesting that we hold the case in abeyance pending the resolution of the district court motions. We denied the District's motion but directed the parties to address this jurisdictional issue further in their briefs. As the District now concedes, none of the relevant motions was filed in the district court within ten days after the grant of summary judgment, as Federal Rule of Civil Procedure 59(e) requires. Hence, the motions were not timely, and do not affect the timeliness of Smith's notice of appeal. *See* Fed. R. App. P. 4(a).

8

III

We review de novo the district court's decision to grant summary judgment. *See Haynes v. Williams*, 392 F.3d 478, 481 (D.C. Cir. 2004). We affirm only if, viewing the evidence in the light most favorable to Smith, no reasonable jury would find in her favor. *See Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005).

Employers may not retaliate against employees who file complaints of disability discrimination under the ADA. *See* 42 U.S.C. § 12203(a). In analyzing Smith's retaliation claim, we use the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Although the framework was developed for Title VII cases, our sister circuits have all accepted its application to ADA retaliation suits under § 12203(a), as we do now. *See Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003); *New England Health Care Employees Union v. R.I. Legal Servs.*, 273 F.3d 425, 429 (1st Cir. 2001); *Rhoads v. FDIC*, 257 F.3d 373, 391-92 (4th Cir. 2001); *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Silk v. City of Chicago*, 194 F.3d 788, 799 (7th Cir. 1999); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999); *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588-89 (6th Cir. 1998); *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1121-22 (5th Cir. 1998); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997); *see also Brown v. Brody*, 199 F.3d 446, 456 n.10 (D.C. Cir. 1999) ("Courts of appeals routinely apply the same standards to evaluate Title VII claims as they do ADA claims, ADEA claims, and even ERISA claims.").

Under this framework, the plaintiff must establish the three elements of a prima facie case of retaliation: first, that she "engaged in protected activity"; second, that she "was subjected to adverse action by the employer"; and third, that "there existed a causal link between the adverse action and the protected activity." *Jones v. Wash. Metro. Area Transit Auth.*, 205 F.3d 428, 433 (D.C. Cir. 2000) (internal quotation marks and citations omitted). "Such a showing raises 'a rebuttable presumption of unlawful discrimination' and shifts to the defendant the burden to 'rebut the presumption by asserting a legitimate, non-discriminatory reason for its actions.'" *Id.* (citations omitted). If the defendant does so, "the *McDonnell Douglas* framework disappears, and we must decide whether a reasonable jury could infer intentional discrimination" from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were discriminatory or that the non-discriminatory justification was pretextual. *Murray*, 406 F.3d at 713.

Clearly, Smith engaged in a statutorily-protected activity when she filed her first EEOC complaint. *See Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999). Smith claims the District took adverse actions against her by detailing her to CPEP, denying her request for advance sick leave, and effectively suspending her and forcing her to retire. Assuming, without deciding, that these acts do qualify as "adverse actions," and that a causal connection between her EEOC complaint and the District's actions did exist, Smith's case still fails under the *McDonnell Douglas* framework. The District presented legitimate, non-discriminatory reasons for its actions: it detailed Smith to CPEP in an attempt to give her a position that would not require home visits; it denied her request for advance sick leave because she requested more leave than regulations allowed; and it instituted disciplinary actions against her in response to her negligence and insubordination (including

discourteous treatment of her supervisor). Smith did not provide evidence on which a reasonable jury could conclude that these proffered justifications were mere pretext and that discriminatory animus motivated the District's actions. The District's non-discriminatory justifications for its actions remain completely unrebutted. Therefore, summary judgment was properly granted on Smith's retaliation claim.

IV

The same cannot be said of Smith's disability discrimination claim. Smith argues that the district court abused its discretion in entertaining the District's late motion for summary judgment. The District filed its third motion for summary judgment on April 9, 2004, contending that Smith's disability discrimination claim was not timely, as she did not file it in the district court within 90 days after her first "right to sue" letter was issued. Although the District concedes it never moved for an extension of the December 27, 2002, deadline for filing summary judgment motions, the district court granted the late motion without discussing the lack of a request for an extension.

Federal Rule of Civil Procedure 6(b) governs extensions of time for various filings with the trial court. When a court sets a deadline, the court may, for cause, exercise its discretion "upon motion made after the expiration of the specified period" and permit the belated action "where the failure to act was the result of excusable neglect." Fed. R. Civ. P. 6(b). In *Lujan v. National Wildlife Federation*, the Supreme Court noted the distinction between this provision and Rule 6(b)(1), which allows a court to grant an extension if a "request" is made before the time for filing expires. 497 U.S. 871, 896 n.5 (1990). By contrast, the Court emphasized that post-deadline extensions may be granted only "for cause shown" and "upon motion." *Id.* at 896. Any post-deadline motion "must contain a high degree of formality

and precision, putting the opposing party on notice that a motion is at issue and that he therefore ought to respond." *Id.* at 896 n.5. We review the district court's decisions under Rule 6(b) for abuse of discretion. *See In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003).

We have been quite deferential to Rule 6(b) decisions in the past, even affirming a deadline extension that was granted without a formal finding of excusable neglect when the court found no prejudice to the other party.[5] *See Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001). In *Yesudian*, however, we found that the Rule 6(b)(2) motion requirement may have been satisfied by a memorandum

---

[5] The danger of prejudice to the other party is one of the factors to be considered in making a determination of "excusable neglect." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (construing Bankr. R. 9006(b)); *see also Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) (applying the *Pioneer* analysis to Rule 6(b)). Other factors to be considered in this equitable determination include "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395. Although the district court did not make a formal finding of excusable neglect, we note that the *Pioneer* factors would not have supported the district court's acceptance of the District's late motion, even if the District had filed a formal request for an extension. First, the district court found Smith would suffer prejudice from the District's late filing; the award of costs and attorney's fees was aimed at remedying the prejudice. Second, the length of the delay was well over a year, not just a few days. Third, the District did "not even attempt to justify . . . ignoring the deadlines"; no reason for the delay was presented. *Smith III*, 2005 WL 488824, at *3. Only one of the four factors—that the District did not appear to act in bad faith—supports the court's decision.

filed by the requesting party. *Id.* Here, the District concedes that it never moved for an extension of the deadline. In the absence of any motion for an extension, the trial court had no basis on which to exercise its discretion. *See Lujan*, 497 U.S. at 896 (stating that "any *post*deadline extension must be 'upon motion made'"). Under these circumstances, then, we are compelled to conclude that the district court abused its discretion in entertaining the late motion for summary judgment on Smith's disability discrimination claim.

V

For the above reasons, we affirm the district court's grant of summary judgment on Smith's retaliation claim, but reverse the grant of summary judgment on the discrimination claim and remand for trial on that claim only.

*So ordered.*