Cassandra M. MENOKEN, Appellant

v.

John BERRY, Director, United States Office of Personnel Management, Appellee.

No. 09–5184.

United States Court of Appeals, District of Columbia Circuit.

Oct. 13, 2010.

Rehearing En Banc Denied Dec. 15, 2010.

Cassandra M. Menoken, Washington, DC, pro se.

Wyneva Johnson, R. Craig Lawrence, U.S. Attorney's Office, Washington, DC, for Appellee.

Before: SENTELLE, Chief Judge, ROGERS, Circuit Judge, and WILLIAMS, Senior Circuit Judge.

## *JUDGMENT*

PER CURIAM.

This appeal from a judgment of the United States District Court for the District of Columbia was presented to the court and briefed by the parties. The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. For the reasons presented in the accompanying memorandum, it is

**ORDERED** and **ADJUDGED** that the grant of summary judgment be affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

*MEMORANDUM*

Cassandra M. Menoken appeals the grant of summary judgment in her Title VII case, contending that the district court erred in relying on evidence that was neither reliable nor admissible, declining to consider the government's admissions under Fed.R.Civ.P. 36, and failing to recognize that any perceived evidentiary deficiencies in her case were attributable to prejudicial conduct by appellee during discovery. Upon *de novo* review, *see Porter v. Shah*, 606 F.3d 809, 813 (D.C.Cir.2010), we affirm.

Appellant is a female African American attorney who in 1993 applied to the Office of Personnel Management ("OPM"), for an Administrative Law Judge ("ALJ") position. In 1994, she filed a formal charge with the Equal Employment Opportunity Commission ("EEOC") alleging that the selection process unlawfully discriminated against women and African Americans. In 2000, the EEOC Administrative Judge ("Judge") agreed that OPM's practice of assigning five "organizational skills" points in the Supplemental Qualifications Statement ("SQS") evaluation to applicants who were employed as partners at large law firms created an unlawful disparate impact based on race, but rejected appellant's other claims.

Appellant filed suit in 2003, alleging that OPM had failed to comply with the Judge's order to cease applying the five-point "partner benchmark" assessment. The government countered with evidence that OPM had eliminated the partner benchmark in its SQS evaluations. Appellant contested on hearsay grounds the admissibility of a memorandum to her from an OPM official explaining the steps taken to comply with the order. The district court found the memorandum was redundant with the deposition testimony of an OPM

official and did not rely on it. Appellant did not proffer evidence that OPM continues to apply the partner benchmark in the SQS scoring of applicants.

■ Appellant also alleged that OPM has discriminated against African American and women applicants through various policies and practices for ALJ selection. For the racial discrimination claim, appellant refers in her declaration to administrative record evidence, including deposition testimony from OPM employee Sherry Turpenoff, that at least some OPM scorers relied on guidance that evaluated candidates based on job titles. But appellant proffers no evidence that the job title distinctions made in those scoring sheets had a disparate impact on African Americans. Instead, appellant relies on unanalyzed survey data indicating that African Americans were better represented in the federal government than in law firms. Yet, the scoring sheets distinguish candidates by specific job titles and responsibilities, not merely by employer. A scorer using these ratings guides would have given some government attorneys "5" scores, while some private attorneys would rate at "2." OPM proffered evidence that a number of federal attorneys did receive "5" scores.

Appellant also alleged that an OPM supervisor, John Flannery, was biased against African Americans, but she offers no evidence that this was true or that she suffered an adverse employment action as a result of this alleged bias. Instead, appellant relies on the fact that OPM responded to her request for admissions one day late as the result of an apparent mistake by an attorney filling in for counsel. According to appellant, the statements contained in the request should be deemed to have been admitted. The district court, apparently exercising its discretion under Rule 36(a)(3), Fed.R.Civ.P., decided to consider OPM's tardy responses.

For the gender discrimination claim, appellant proffered evidence that OPM's policy during relevant times was to reject applicants who had twice before declined a position in a geographic location that the applicants had designated as acceptable. Appellant does not provide any relevant evidence to support her claim that this policy had a disparate impact on women. In a declaration, she cites the 1988 deposition testimony of an OPM employee, Craig Pettibone, stating his opinion that this policy had such an impact. But this testimony does not appear in the appeal record, and, in any event, the district court concluded that it was improper opinion evidence. All that appellant offers is unanalyzed data showing that as of September 1993, there were 80 female ALJs and 1,077 male ALJs. Without more, this raw data does not show that the geographic selection requirements had any disparate impact on women. Additionally, appellant changed her geographic preference statement in 1997 to reflect that she would accept an assignment in "all locations."

To make a *prima facie* showing of disparate impact discrimination, the plaintiff must produce sufficient evidence to allow a reasonable trier of fact to conclude that a "facially neutral employment practice had a significantly discriminatory impact." *Connecticut v. Teal*, 457 U.S. 440, 445, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982); *see Anderson v. Zubieta*, 180 F.3d 329, 338–39 (D.C.Cir.1999). Upon such a showing, "the burden shifts to the employer to 'demonstrate that the challenged practice is job related for the position in question and consistent with business necessity.'" *Anderson*, 180 F.3d at 339 (quoting 42 U.S.C. 2000e–2(k)(1)(A)(i)). The burden then shifts to the plaintiff to demonstrate "that an alternative employment practice

could meet the employer's legitimate needs without a similar discriminatory effect." *Id.*

The district court correctly granted summary judgment on appellant's disparate impact claims because appellant failed to meet her burden to show that OPM's hiring policies "had a significantly discriminatory impact" on the basis of race or gender. *Teal,* 457 U.S. at 445, 102 S.Ct. 2525. Specifically, the record reveals no evidence to suggest that OPM continued to use the partner benchmark after the Judge's 2000 ruling. With respect to OPM's use of job titles to score candidates and the policy barring candidates who twice rejected assignments within their preferred geographic regions, appellant similarly failed to meet her burden to proffer evidence from which a reasonable jury could find that these alleged policies, if in force, had a significantly discriminatory impact on African Americans or women, much less on her. The raw, unanalyzed statistics proffered by appellant do not show how many women or African Americans applied nor whether the specific policies in issue had disparate effects. Simply put, the "statistics were not sufficiently presented to make out a *prima facie* case of adverse impact." *Frazier v. Consol. Rail Corp.,* 851 F.2d 1447, 1453 (D.C.Cir. 1988). There was also no evidence that appellant herself was affected by any of these policies. OPM offered evidence that upon eliminating the allegedly discriminatory considerations, appellant's score was unchanged, and appellant changed her geographic preference designation to all locations with no effect on her application status.

■ In a refusal-to-hire Title VII disparate treatment case, a plaintiff must show that she is a member of a protected class, that she applied for and was qualified for a job but was nonetheless rejected for the job, and the position thereafter "remained open and the employer continued to seek applicants from persons of" the plaintiff's qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the traditional *McDonnell Douglas* framework, the burden then shifts to the employer to show a legitimate, non-discriminatory basis for the decision, *id.,* and then back to the plaintiff to show that the proffered reason was pretextual, *id.* Where the employer has asserted a legitimate, non-discriminatory reason for its decision, the courts ordinarily should bypass the initial *prima facie* analysis and focus on the final question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated" against the plaintiff in violation of Title VII? *Brady v. Office of Sergeant at Arms,* 520 F.3d 490, 494 (D.C.Cir. 2008).

Appellant's disparate treatment claims fail under this analysis because OPM has provided a legitimate nondiscriminatory reason for its candidate scoring system— namely, that it is "necessary to evaluate applicants' experience and accomplishments." The district court correctly concluded that appellant has not proffered any evidence to suggest that this reason is merely pretextual.

■ To the extent appellant also contends that the district court abused its discretion when it allowed OPM's day-late request for admission responses without a proper motion for extension, her reliance on *Smith v. District of Columbia,* 430 F.3d 450 (D.C.Cir.2005), is misplaced. In that case a motion was filed 15 months late and could not be deemed timely filed by the district court absent a motion for extension under Fed. R. Civ. Rule 6(b). *Id.* at

374

456–57. But unlike Rule 6(b), which requires a motion before the district court may extend the time for filing, Rule 36(a)(3) allows a "shorter or longer time for responding" to a request for admission to be "ordered by the court" without a motion. Appellant's reliance on *Rainbolt v. Johnson*, 669 F.2d 767, 768 (D.C.Cir. 1981) is similarly misplaced. In *Rainbolt*, a Rule 36 response was never filed at all. *Id.* The court merely held that the district court correctly denied a post-trial motion to withdraw the Rule 36 admissions, but then failed to treat the facts as admitted in its post-trial rulings. *Id.* Excusable neglect is the applicable standard for extending a time limit under Fed. R. Civ. P. 6(b), and as appellant has offered no reason why a stricter standard should govern such extensions under Rule 36, we will apply it here. Under that standard it is clear that what occurred here falls within this category. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (outlining excusable neglect factors); *see also Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 971 (D.C.Cir.2001) (applying excusable neglect test to Rule 6(b) motion).

Finally, appellant "urge[s]" this court "to reverse or vacate" other discovery rulings but does not identify any error by the district court in her opening brief, except to state, in a footnote to the "Rulings Under Review" section, that a ruling quashing her Rule 30(b)(6) notice of deposition was "influenced by misrepresentations defendant's counsel made during an *ex parte* conversation with the Magistrate Judge." In her reply brief, she contends that the magistrate judge erred in limiting the scope of discovery to events that occurred after May 1993, when Menoken submitted her ALJ application. Arguments so "asserted but unanalyzed" are deemed to have been waived, *Sec. & Ex-*

*change Comm'n v. Banner Fund Int'l*, 211 F.3d 602, 613 (D.C.Cir.2000).